THE JAMES R. HILLMAN FAMILY ESTATE, DONNA J. HILLMAN, TRUSTEE, JAMES R. HILLMAN, TRUSTEE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Hillman Family Estate v. Commissioner
Docket Nos. 6561-79, 7122-79, 10084-81, 10127-81.
United States Tax Court
T.C. Memo 1982-468; 1982 Tax Ct. Memo LEXIS 281; 44 T.C.M. (CCH) 840; T.C.M. (RIA) 82468; August 10, 1982. *281 Held,ESP-type family trust not recognized. James R. Hillman, pro se. Joseph C. Hollywood, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies with respect to the petitioners, [2] for the years and in the amounts as follows: Tax
Addition to Tax
Petitioner
Years
Deficiency
I.R.C. § 6653(a)
James R. Hillman family Estate,
1975
$3,806.91
$190.35
Donna J. Hillman, Trustee,
1976
4,582.27
229.11
James R. Hillman, Trustee
Docket No. 6561-79
James R. Hillman and Donna J. Hillman
1975
1,901.24
95.06
Docket No. 7122-79
1976
2,474.00
123.70
James R. Hillman and Donna J. Hillman
1977
5,334,00
267.20
Docket No. 10084-81
James R. Hillman and Donna J. Hillman
1978
3,423.00
171.15
Docket No. 10127-81
The *282 issue in this case is whether or not respondent is required to recognize for Federal tax purposes the purported transfer by James R. Hillman of his lifetime services (and designated real and personal properties) to The James R. Hillman Family Estate, a trust created by James R. Hillman in 1971. If the trust is not to be recognized for tax purposes, we must determine whether or not the additions to tax under section 6653(a) [3] are applicable. FINDINGS OF FACT AND OPINION Some of the facts have been stipulated and are so found. The parties have stipulated that at the time of the filing of each of the petitions, petitioners James R. Hillman and wife Donna J. Hillman were residents of Royal Oak, Michigan. In October 1971, Mr. Hillman executed and caused to be recorded a declaration of trust described as "THE JAMES R. HILLMAN FAMILY ESTATE (A TRUST)," herein referred to as the Trust. The original trustees were Gertrude A. McKenzie and Dick H. McKenzie, respectively the mother and stepfather of Mr. Hillman. Mr. Hillman testified that Mrs. McKenzie provided him with the forms *283 for this declaration of trust and otherwise advised him with respect thereto. While he testified that he did not use the trust form prepared by Educational Scientific Publishers (ESP) because the latter was not created until after 1971, we have compared petitioner's trust with examples of ESP trust and find no material distinctions. [4] In addition, Mrs. McKenzie was heavily involved in promoting sale of the ESP materials and in docket No. 13642-78 involving petitioners' 1973 and 1974 years, petitioners were represented by an ESP attorney. That attorney stipulated that petitioners' docket No. 13642-78 would be governed by this Court's decision in Corcoran v. Commissioner, docket No. 13746-78, decided by this Court on December 8, 1980. [5] Pursuant to that stipulation, this Court entered a decision against petitioners, which decision, is now pending on appeal before the Court of Appeals for the Sixth Circuit. In view of petitioners' assertion that their fact situation is different from that involved in Corcoran and that their attorney in docket No. 13642-78 *284 was not authorized to agree to accept the results in Corcoran, we decided to allow petitioners to have their day in Court in these consolidated proceedings. However, for the reasons set forth herein, we conclude that the trust in all material respects is an ESP trust. Accordingly, these cases are governed by the many decisions of this Court on ESP trusts. During the period December 1973 through December 1977, Mr. Hillman worked for the State of Michigan as executive director of the Michigan Commission on Indian Affairs. In January 1978, petitioner commenced work for the North American Indian Association of Detroit, Inc., as director for the Detroit American Indian Center. Mrs. Hillman worked for various employers during the period, at least in some instances in secretarial positions. Under date of December 12, 1977, Mr. Hillman addressed a letter to the chairman of the Board of the North American Indian Association to which he attached his personal resume, presumably prepared by him. The resume recites that he--James R. Hillman--was employed from December 28, 1973, to the date of the letter by the Michigan Commission. Prior employment going back into 1969 is similarly described. *285 However, he requested the Association Board to enter into an agreement with him to pay the Trust for his services "instead of making the checks payable to me personally." Mr. Hillman individually received a written offer of employment as executive director of the Center dated December 20, 1977, but the offer contained no reference whatsoever to the Trust. The record indicates that the Center declined to enter into the requested agreement but instead agreed that payroll checks would be made payable to "James R. Hillman, Trustee." The facts as to employment by the State of Michigan were not put in evidence other than the recital in the resume and Michigan Wage and Tax Statements, all of which were issued in Mr. Hillman's name using his social security number. We find that both the State of Michigan and the North American Indian Association of Detroit, Inc., intended to and did employ Mr. Hillman as an individual. Neither organization entered into any contract with the Trust as an independent contractor for it to provide Mr. Hillman's services. [6] While he made a concerted effort to persuade his employers to use the employer identification number of the Trust and to treat the employment *286 as though there had been a contract between the employer and the Trust as an independent contractor, we find that such window dressing efforts did not alter the facts, although they did serve to confuse the Social Security Administration. We note that the Trust recites that the lifetime services of James R. Hillman have been transferred to the Trust for its exclusive use together with certain real and personal properties, evidenced by "Affidavit, Deed, and Bill of Sale, in exchange for all of the beneficial interest (100 units) of THIS TRUST * * *." This document makes no reference whatsoever to Mrs. Hillman. There is no evidence as to an affidvait or a deed or bill of sale as referred to in the trust, but we note that there is attached to petitioners' amended 1975 individual income tax return a document purporting to be an employment contract, *287 which refers to the Trust and recites that the Trust entered into a contract by which it retained the services of James R. Hillman to be "Executive Manager" and the services of Donna J. Hillman to be "Executive Secretary." This purported agreement also recites that the two individuals were to perform services for hire for others which the trustees of the Trust may direct and any remuneration would be paid directly to the Trust. There is a further statement attached to this amended return over Mr. Hillman's signature to the effect that during 1975 sums in excess of $17,000 were paid to Mr. and Mrs. Hillman under their social security numbers by error, such funds belonging to the Trust. Similar self-serving statements are attached to other income tax returns which are in evidence. During the years 1975 through 1978, we find that Mr. Hillman individually earned the compensation paid for his services. The proof is conclusive on this point. For aught that appears, every salary payment made for the services of Mr. Hillman during this period was actually received by him and deposited or used for his account. Whether he may have delivered the checks to himself and his wife as trustees *288 does not appear, but it would be immaterial. There is nothing to indicate with respect to Mrs. Hillman that any employer was even aware of the Trust or of Mr. Hillman's claims with respect thereto. The W-2's issued to Mrs. Hillman are perfectly regular on their face. There is no other evidence. We, therefore, find that during these four years Mrs. Hillman was employed by each of her several employers as an individual, and that her remuneration was intended to be and was earned by and paid to her an an individual. There is no evidence that any of these funds ever reached the Trust, but that would not change the result. The record is silent as to how the Trust operated. While its initial trustees were, as noted, Mr. Hillman's mother and stepfather, Mr. Hillman testified that his stepfather withdrew shortly after the creation of the Trust. During the periods here involved apparently Mr. and Mrs. Hillman were sole trustees. It would serve no useful purpose here to analyze in detail the multiple provisions of the Trust instrument. The Trust does make reference to beneficiaries, although the beneficiaries are not named as such except in that provision referred to above which recites *289 that the Trust has the exclusive use of "James R. Hillman's lifetime services" in exchange for the 100 units of beneficial interest. It is clear that this Trust, like the other ESP trusts which have been before the Court on numerous occasions, is intended as a device solely to accomplish some shift in and reduction of Federal income tax liability. [7] *290 The Trust was simply an attempt to assign income, which has long been recognized as ineffective for Federal Tax purposes. Lucas v. Earl,281 U.S. 111 (1930); Commissioner v. Culbertson,337 U.S. 733 (1949). In this case, some of the employers apparently were not even aware of the existence of the Trust and it is clear that, where Mr. Hillman tried to persuade his employers to recognize the Trust, they effectively declined to do so. We have found that Mr. and Mrs. Hillman individually earned the wages and salary which were paid to them. Therefore, Mr. and Mrs. Hillman are fully taxable on their earnings. Vnuk v. Commissioner,621 F.2d 1318 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; Vercio v. Commissioner,73 T.C. 1246 (1980). Petitioners have failed to produce any evidence as to any properties owned by the Trust or as to any dividends, interest, rental or other income paid to the Trust. Accordingly, as to all other income or deductions claimed by the Trust, petitioners have either abandoned the issue or have failed to carry their burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). Moreover, even if this Trust had any economic substance, which it does not have, under the grantor trust rules of sections 671 through 677, any income properly reportable by the Trust will be taxable to the grantors. Vercio v. Commissioner,supra;Wesenberg v. Commissioner,69 T.C. 1005 (1978). With respect to the additions to tax under section 6653(a), petitioners have not shown that the deficiencies are not due to negligence or intentional disregard of the rules and regulations. On the contrary, it is quite clear that Mr. Hillman knew exactly what he was doing, what the law required and that his efforts would not be recognized by respondent *291 or by this Court. We find for respondent both as to the deficiencies and as to the section 6653(a) additions. In docket Nos. 6561-79 and 7122-79, the petition raises an additional issue, that the statute of limitations has run for the year 1975. Petitioners have offered no evidence on this point, and we assume that it has been abandoned. In docket Nos. 10084-81 and 10127-81, respondent filed a motion for the imposition by the Court of damages for delay under section 6673. The Court overruled that motion but reserved the right to impose damages for delay on the Court's own motion if the Court felt it appropriate to do so. We have concluded that this is not an appropriate case for the imposition of damages under section 6673. Mr. Hillman appeared to be sincere in his belief that the years 1973 and 1974 were not handled appropriately and that his counsel acted without authority. Although we have found no distinction between the Trust in this case and that involved in Corcoran v. Commissioner,supra, and we do not think that petitioner was prejudiced by the action of his attorney in docket No. 13642-78, we conclude that petitioners are entitled to have a decision by this Court *292 on their own facts. Decision will be entered for the respondent.
Footnotes
1. The following cases have been consolidated for briefing and opinion: The James R. Hillman Family Estate, Donna J. Hillman, Trustee, James R. Hillman, Trustee, docket No. 6561-79; James R. Hillman and Donna J. Hillman, docket Nos. 7122-79, 10084-81, 10127-81.↩
2. Docket No. 6561-79 involves The James R. Hillman Family Estate (a Trust) for the years 1975 and 1976. The remaining dockets involve James R. Hillman and Donna J. Hillman, individually, for the years 1975 through 1978. Following a concession by respondent in docket No. 6561-79, the parties agreed that this docket No. and docket No. 7122-79 involved identical issues with docket Nos. 10084-81 and 10127-81. Accordingly, the two 1979 dockets previously consolidated, were submitted on a stipulation and the entire record in the two 1981 dockets consolidated, which dockets and been tried and submitted. All four dockets have been consolidated for pourposes of briefing and opinion.↩
3. Unless otherwise indicated, all statutory references are to to the Internal Revenue Code of 1954, as amended.↩
4. See, for example, the trust involved in Corcoran v. Commissioner,T.C. Memo. 1980-546↩. 5. See Corcoran v. Commissioner,supra.↩
6. We do not intend any inference as to whether a different result would follow if in fact such independent contractor relationship had been created, but the mere fact of a paper relationship between such a trust and a business entity would have little bearing on characterization of the status of the individual performing services for the entity.↩
7. See Borchert v. Commissioner,T.C. Memo. 1982-379, in which we pointed out in footnote 7 that over 50 decisions of this Court and the Courts of Appeals have found that ESP trusts do not shelter taxpayers from taxation.